## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

Tahir Saeed

Docket No.: 0090 1:12CR00240-002

## SENTENCING MEMORANDUM

Dennis E. Boyle, Esquire
Boyle Frost
Attorneys at Law
1629 K Street NW
Suite 300
Washington, DC  20006
*dennis.boyle@boylefrost.com*

Counsel for Defendant Tahir Saeed

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.  Applying these principles and exercising its considerable discretion, the Court should impose an extended period of supervised release.  First, the advisory guideline range of  87-108months is not a reasonable estimate of an appropriate sentence.  Second, the fact that rehabilitation is not a concern for this defendant warrants a significant downward departure and variance.  Finally, The Advisory Guideline range is not properly calculated. ............................................................................................... 4

II. Other factors warranting a departure ................................................................ 7

    A.  Tahir's Post-Arrest and Post-Conviction Rehabilitation Warrants A Significant Downward Variance ............................................................... 7

    B.  Other Factors to Consider. ...................................................................... 7

III. A term of time served Properly Balances 18 U.S.C. § 3553(a) By Imposing Sufficient But Not Greater Than Necessary Punishment ................................... 8

CONCLUSION ...................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Gall v. United States*,
    552 U.S. 38 (2007) .................................................................................................. 2, 3, 5, 7

*Kimbrough v. United States*,
    552 U.S. 85 (2007) ................................................................................................................ 5

*Pepper v. United States*,
    562 U.S. 476, 131 S. Ct. 1229 (2011) .................................................................... 2, 3, 4, 7

*United States v. Arrelucea-Zamudio*,
    581 F.3d 142 (3d Cir. 2009) ................................................................................................ 9

*Sullivan v. Ashe*,
    302 U.S. 51 (1937) ................................................................................................................ 4

*United States v. Booker*,
    543 U.S. 220 (2005) .................................................................................................... 2, 3, 5

*United States v. Emmenegger*,
    329 F.Supp. 2d 416 (S.D.N.Y. 2004) .................................................................................. 5

*United States v. Fumo*,
    655 F.3d 288 (3d Cir. 2011) ........................................................................................ 2, 3, 4

*United States v. Nellum*,
    No. 2:04-CR-30-PS, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005) ...................................... 8

*United States v. Powell*,
    650 F.3d 388 (4th Cir. 2011) .............................................................................................. 3

*United States v. Siddons*,
    660 F.3d 699 (3d Cir. 2011) ................................................................................................ 3

*United States v. Tomko*,
    562 F.3d 558 (3d Cir. 2009) ............................................................................................ 3, 9

*United States v. Vonner*,
    516 F.3d 382 (6th Cir. 2008) (*en banc*) ............................................................................. 3

*United States v. Whitehead*,
    532 F.3d 991 (9th Cir. 2008) .............................................................................................. 3

*United States v. Wright*,
    642 F.3d 148 (3d Cir. 2011)............................................................................................................3

*Williams v. New York*,
    337 U.S. 241 (1949)......................................................................................................................2

**Statutes**

18 U.S.C. § 371..................................................................................................................................1

18 U.S.C. § 1503(a) ..........................................................................................................................1

18 U.S.C. § 3553(a) ..............................................................................................................2, 3, 8, 9

28 U.S.C. § 952..................................................................................................................................1

28 U.S.C. § 963..................................................................................................................................1

28 U.S.C. § 1956................................................................................................................................1

Sentencing Reform Act.....................................................................................................................8

## INTRODUCTION

Defendant Tahir Saeed ("Tahir") stands before this Court for sentencing after pleading guilty of Conspiracy to Import Schedule II, III, and IV Controlled Substances, in violation of 21 USC §§ 952(a)&(b), 960(a)(1) and (b)(3), (b)(5), (b)(6) and 963, Conspiracy to Defraud the United States and its Agencies and Introduce into Interstate Commerce Misbranded Drugs, in violation of 18 USC § 371, and Conspiracy to Launder Monetary Instruments, in violation of 18 USC § 1956(a)(2)(A), (a)(2)(B)(i) and 1956(h). Following the progeny of cases stripping the mandatory nature from the U.S. Sentencing Guidelines, district courts are now fully empowered to consider every aspect of a crime, every quality of a defendant, and every available punishment when fashioning a sentence.

While Tahir recognizes the seriousness of his offenses and the need for just punishment, he respectfully asks this Court to recognize his post-arrest cooperation, deteriorating physical condition, remote chance of recidivism, and the balance of his life and impose a sentence below the advisory guideline range. In doing so, Tahir relies primarily on the Presentence Report (Doc. 0090) filed with this Court on July 11, 2016 and revised on August 2, 2016 prior to his originally scheduled sentencing. The parties had calculated the guidelines to be an Offense Level, Criminal History Category I with a sentencing range of 70 to 87 months. The Presentence Report, however, calculates Offense Level to be 29 with a Criminal History Category I with a sentencing range of 87 to 108 months. Tahir has timely objected to this calculation. The guideline range does not take into account an anticipated departure motion under U.S.S.G. 5k1.1 .

The sentencing guidelines, however, are but one factor to consider under 18 U.S.C. § 3553(a). The other factors involved, primarily subsection (1) which requires the court to consider the "nature and circumstances of the offense and the history and characteristics of the defendant". In that regard, there are several characteristics of the offense that are noteworthy.

First, Tahir has lived and worked in Pakistan his entire life.  Prior to his arrest in the United Kingdom, he had never been to the United States. the decision to ship prescription medications to the U.S. was made by his business colleague (and co-defendant) Sheik Wassem Ul Haq.  It is significant that the idea to ship medications to the U.S. was therefore not his.  His actions, although violative of U.S. law, were legal under the laws of Pakistan.  While not a defense, he did not know that he was violating American law—had he known the laws of the U.S., he never would have violated them.

Finally, Tahir has never been in trouble before and it very unlikely that he would be a repeat offender. He has led a law abiding life, is a family man and has accepted responsibility for his actions. He owned a small business and was the primary breadwinner for his family. During his incarceration, his siblings have helped to support his family. Once his sentence is complete, Tahir will be deported to Pakistan. Taking into account these factors, as well as the anticipated U.S.S.G. 5k1.1 Motion, it is respectfully requested that this court time served.

## ARGUMENT

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 1239-40 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)); *Gall v. United States*, 552 U.S. 38, 52 (2007).  To realize this principle, sentencing courts endeavor to fashion sentences which not only fit the crime but also the offender.  *Pepper*, 131 S.Ct. at 1240 (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)).

Following *United States v. Booker,* 543 U.S. 220 (2005), "[i]n sentencing a defendant, district courts follow a three-step process:  At step one, the court calculates the applicable

Guideline range, which includes the application of any sentencing enhancements." *United States v. Fumo*, 655 F.3d 288, 308 (3d Cir. 2011) (quoting *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011) (citing *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009)). "At step two, the court considers any motions for departure and, if granted, states how the departure affects the Guidelines calculation." "At step three, the court considers the recommended Guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a) and determines the appropriate sentence which may vary upward or downward from the range suggested by the Guidelines." *Id.* As such, *Booker* and its progeny "empowered district courts, not appellate courts … [and] breathe[d] life into the authority of district court judges to engage in individualized sentencing." *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (quoting *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (*en banc*); *see also United States v. Powell*, 650 F.3d 388, 392 (4th Cir. 2011) (quoting *Pepper*, 131 S.Ct. at 1240) ("the punishment should fit the offender and not merely the crime").

The predominant charge for a sentencing court is to impose a sentence sufficient, but not greater than necessary to reflect the statutory purposes and goals. 18 U.S.C. § 3553(a). And, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Thus, sentencing courts must treat the guidelines as just one of a number of sentencing factors, and the court of appeals reviews a sentence's reasonableness under an abuse of discretion standard, regardless of whether the sentence imposed is within or outside the advisory guideline range. *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Under this regime, a court should consider all relevant

sentencing factors, giving no more weight to one factor than any other. *See Pepper*, 131 S. Ct. at 1240 (citing *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender.")).

    I.    **APPLYING THESE PRINCIPLES AND EXERCISING ITS CONSIDERABLE DISCRETION, THE COURT SHOULD IMPOSE AN EXTENDED PERIOD OF SUPERVISED RELEASE. FIRST, THE ADVISORY GUIDELINE RANGE OF 87-108 MONTHS IS NOT A REASONABLE ESTIMATE OF AN APPROPRIATE SENTENCE. SECOND, THE FACT THAT REHABILITATION IS NOT A CONCERN FOR THIS DEFENDANT WARRANTS A SIGNIFICANT DOWNWARD DEPARTURE AND VARIANCE. FINALLY,** THE ADVISORY GUIDELINE RANGE IS NOT PROPERLY CALCULATED.

It this case, the Presentence Report groups Tahir's offenses into two separate groups: Group I comprises Counts I and 48 of the Indictment, Conspiracy to Import a Controlled Substance and Conspiracy to Launder Money. In Group I, the money laundering guidelines are used to calculate an Offense Conduct Level of 30 based upon the laundering of $776,530.23 in proceeds. (Para. 49) Group 2 comprises Count 29, Conspiracy to defraud the United States and its agencies of $550,000 based upon the "estimated street value of the controlled substances". (Para. 57). Since it is the conduct that at issues in both counts, indeed, nearly the same amount of funds, it is Tahir's position that under U.S.S.G. 3D1.2(a), the "counts involved the same victims and the same acts of transactions". See also, Application Note 3.

As alleged in the Indictment, Tahir imported controlled substances into the United States—the amount of funds associated the importation of these drugs was $776,530.23, which was used under the money laundering guidelines to calculate the offense level for Group I. The salient fact for calculating the guidelines under Group 2 was the "street value" of the very same controlled substances in Group 1. All offenses under the guideline have as their basis the importation of the very same controlled substances. As such, the various counts should not have

been broken into two separate groups and the actual offense level should therefore have been calculated at a level 27 with a guideline range of 70 to 87 months.

Even at this reduced level the applicable advisory guideline range fails to provide the court with a reasonable estimate of an appropriate sentence. *See generally Gall*, 552 U.S. 38; *Kimbrough*, 552 U.S. 85. And, under the *Booker* progeny, even in the most mine-run cases, if a guideline was developed without taking into account empirical data and national experience, the sentencing court is free to conclude that the guideline "yields a sentence greater than necessary" to achieve the purposes of section 3553(a). *Kimbrough*, 552 U.S. at 109-10. Section 2B1.1, the general fraud guideline, has been said to be one such guideline. *See United States v. Emmenegger*, 329 F.Supp. 2d 416, 427 (S.D.N.Y. 2004). The applicable guideline in this case appears equally unreasonable under the specific circumstances of this case.

In fact, in the case of § 2B1.1, many courts have already recognized that the advisory guideline's loss table grossly and inaccurately overstates the harm associated with certain fraud offenses:

> The guidelines provisions for theft and fraud place excessive weight on this single factor [loss], attempting – no doubt in an effort to fit the infinite variations on the theme of greed into a limited set of narrow sentencing boxes – to assign precise weights to the theft of different dollar amounts. In many cases … the amount stolen is a relatively weak indicator of the moral seriousness of the offense.

*Emmenegger*, 329 F.Supp. 2d at 427. The guidelines method of increasing incarceration time by random dollar amounts and numbers of victims without regard to the characteristics of the particular defendant and the crime led to unjust results in this case because the guideline fails to reflect Tahir's individual culpability.

The loss table, in particular, does not account for varying links between causation, harm, and blame worthiness, which are essential in designing a fair and individual punishment.

Supreme Court Justice Stephen Breyer has even noted that the guidelines were never intended to make such distinctions:

> There is little, if anything, to be gained in terms of punishment's classical objectives by trying to use highly detailed offense characteristics to distinguish finally among similar offenders. And there is much to be lost, both in terms of guideline workability and even in terms of fairness (recall the guidelines logarithmic numerical scales).

Stephen Breyer, Federal Sentencing Guidelines Revisited, CRIM. JUST., Spring 1999 at 28, 35 (1998).

Finally, the advisory guideline fails to account for various other factors affecting punishment and retribution such as shame and humiliation. Tahir has been out of the home for some time and it has caused significant issues for his family. While most Muslim daughters would normally wed at age seventeen or eighteen, Tahir's daughter, now aged twenty-one, cannot get married while he is incarcerated. It has created a "very distressing situation." Additionally, due to Tahirs incarceration, his siblings have been forced to support his family. Following Tahir's arrest, the Government issued press releases that are top results when searching his name. This type of press coverage and jail sentence provide a great deterrent for anyone in Pakistan considering a similar offense. Furthermore, as a result of this conviction, Tahir's health problems, an extended term of supervised release, and ultimately deportation, he will likely never again be in a position to engage in such an offense.

Therefore, the Court should sustain Tahir's objections to the advisory guideline calculation and thus reduce the advisory guideline custody calculation. Additionally, because the advisory guideline emphasizes loss over moral culpability and fails to take into account individualized embarrassment, shame, and other consequences, the guideline is not a reasonable estimate of an appropriate sentence. Accordingly, regardless of whether the Court sustains the

objections to the PSR, the Court should grant a significant downward variance to create a sentence fitting Tahir as an individual.

    II.      OTHER FACTORS WARRANTING A DEPARTURE

        A.    **Tahir's Post-Arrest and Post-Conviction Rehabilitation Warrants A Significant Downward Variance**

Post-offense rehabilitation can provide the basis for a downward variance. *See generally Pepper*, 562 U.S. at 480-508 (post-sentence rehabilitation); *see also Gall*, 552 U.S. at 38-60 (post-offense rehabilitation). In this case, Tahir was initially charged in 2012 and has been incarcerated since then. He has committed no further crimes and has been a model prisoner. Further, more than four years has passed since his arrest and Tahir has committed no crimes. Tahir obtained his General Education Development (GED) diploma while in prison, cooperated with the authorities during the investigation and prosecution of criminal conduct, and accepted responsibility for his offense. Given the nature and circumstance of this offense and Tahir's personal history and characteristics he is unlikely to reoffend. Consequently, the Court should significantly vary from the advisory guideline range to reflect Tahir's post-arrest and post-conviction rehabilitation.

        B.    **Other Factors to Consider.**

Tahir has lived and worked in Pakistan his entire life. Prior to his arrest in the United Kingdom, he had never been to the United States. the decision to ship prescription medications to the U.S. was made by his business colleague (and co-defendant) Sheik Wassem Ul Haq. It is significant that the idea to ship medications to the U.S. was not his. His actions, although violative of U.S. law, were legal under the laws of Pakistan. While not a defense, he did not

7

know that he was violating American law—had he known the laws of the U.S., he never would have violated them.

Finally, Tahir has never been in trouble before and it is very unlikely that he would be a repeat offender. He has led a law abiding life, is a family man and has accepted responsibility for his actions. He owned a small business and was the primary breadwinner for his family. During his incarceration, his siblings have helped to support his family. Once his sentence is complete, Tahir will be deported to Pakistan. Taking into account these factors, as well as anticipated U.S.S.G. 5k1.1 Motion, it is respectfully requested that this court sentence a term of time served.

### III. A TERM OF TIME SERVED PROPERLY BALANCES 18 U.S.C. § 3553(a) BY IMPOSING SUFFICIENT BUT NOT GREATER THAN NECESSARY PUNISHMENT

Time served is the appropriate sentence for Tahir under the factors delineated in 18 U.S.C.A. § 3553(a). (*See* Doc. 0090.) Tahir's clean record since the instant offence and deteriorating health magnify the previous arguments. Thus, a sentence of three years supervised release properly balances the statutory sentencing factors and provides sufficient but not greater than necessary punishment. The Court should also consider the following: the current time served provides significant deterrence to any individuals wishing to participate in a similar offense, rehabilitation is not an issue in this case and a repeat of the offense is unlikely. Tahir consented to the forfeiture of $776,530.23 equally the total amount of money derived from proceeds and is in poor health.

Tahir is fifty-four years old. At fifty-four, Tahir poses a significantly reduced risk of recidivism. "[A]ccording to a United States Sentencing Commission report released in May 2004, 'Recidivism rates decline consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates.'" *United States v. Nellum*, No. 2:04-CR-30-PS

8

at *3 (quoting U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12, http://www.ussc.gov/Research/Research_Publi-catons/Recidivism/2004-05_Recidivism_Criminal_History.pdf).

The Court must consider the possible types of sentences which can be imposed. 18 U.S.C. § 3553(a)(3). Given the consequences Tahir has already suffered during his incarceration, his need to care for his family, and his post-offense cooperation, a downward variance is appropriate.

*   *   *

Finally, a sentencing court does not need to evaluate § 3553(a) factors in isolation, rather the court may consider a variance based upon the aggregate weight of these considerations. *See generally United States v. Arrelucea-Zamudio*, 581 F.3d 142 (3d Cir. 2009). Accordingly, considered with the other factors weighing in favor of a downward variance, a three years supervised release or a minimal additional sentence of incarceration sufficiently satisfies the interests of justice.

## CONCLUSION

For the foregoing reasons, this Court should grant Tahir's motion for downward departure, downwardly vary from the Guidelines, and impose a sentence of time served.

August 19, 2016                                                                            RESPECTFULLY SUBMITTED,

/s/ Dennis E. Boyle
Dennis E. Boyle, Esquire
Boyle Frost
Attorneys at Law
1629 K Street NW
Suite 300
Washington, DC  20006
*dennis.boyle@boylefrost.com*
Counsel for Defendant Tahir Saeed

9

**CERTIFICATE OF SERVICE**

I hereby certify that on the date listed below, I electronically filed the foregoing Sentencing Memorandum with the Court using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

August 18, 2016 /s/ Dennis E. Boyle
Dennis E. Boyle, Esquire